**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**BLUEFIELD DIVISION**

UNITED STATES OF AMERICA,

                Plaintiff,

v.                                CRIMINAL ACTION NO. 1:09-cr-00067

RANDY MICHAEL BRODNIK and
ANTHONY IRA KRITT,

                Defendants.

**MEMORANDUM OPINION AND ORDER**

The Court has reviewed motions filed by both Defendants Randy Brodnik and Anthony Kritt and the United States.  Defendant Brodnik's Motion to Dismiss Indictment in Part [Docket 52]; Second Motion to Dismiss Indictment in Part [Docket 94]; Supplement  to Second Motion to Dismiss Indictment in Part [Docket 96]; Response to Mr. Kritt's Motion to Dismiss [Docket 97]; Motion to Strike the Expert Testimony of Robert L. Sommers [Docket 53]; and Motion for Discovery [Docket 61] are pending.  Defendant Kritt's Motion to Dismiss the Superseding Indictment [Docket 92] is also pending, as is the United States' Motion to Disqualify Dr. Brodnik's Counsel, Mr. Robert J. Stientjes, Due to Conflict of Interest [Docket 49].

By Order of Reference filed on March 26, 2009, the Court referred this matter to United States Magistrate Judge R. Clarke VanDervort "for the purpose of doing all things proper to hear and determine or make recommendations for disposition of any pretrial motions filed in this case including, without limitation, conducting a hearing on the motions, if necessary, and entering into

the record a written order setting forth the disposition of the motion or recommendation for disposition, as the case may be." [Docket 7].  Magistrate Judge VanDervort filed his Proposed Findings and Recommendation ("PF&R") on February 17, 2010.  [Docket 112].  In that filing, Magistrate Judge VanDervort recommended that the undersigned deny Defendants' motions, and grant the motion of the United States.

The Court is not required to review, under a de novo or any other standard, the factual or legal conclusions of the magistrate judge as to those portions of the findings or recommendation to which no objections are addressed.  *Thomas v. Arn*, 474 U.S. 140, 150 (1985).  In addition, failure to file timely objections constitutes a waiver of de novo review and Petitioner's right to appeal this Court's order.  *See Snyder v. Ridenour*, 889 F.2d 1363, 1366 (4th Cir. 1989); *United States v. Schronce*, 727 F.2d 91, 94 (4th Cir. 1984).

However, a defendant must cite to specific instances of error.  *United States v. Midgette*, 478 F.3d 616, 621 (4th Cir.2007) (stating that "[28 U.S.C. ] Section 636(b)(1) does not countenance a form of generalized objection to cover all issues addressed by the magistrate judge; it contemplates that a party's objection to a magistrate judge's report be specific and particularized, as the statute directs the district court to review only *those portions* of the report or *specified* proposed findings or recommendations *to which objection is made*.") (internal citations and quotations omitted) (emphasis in original).  As the Fourth Circuit further stated in *Midgette*:

> [a] party must object to the finding or recommendation on that issue with sufficient specificity so as reasonably to alert the district court of the true ground for the objection . . . .  To conclude otherwise would defeat the purpose of requiring objections.  We would be permitting a party to appeal any issue that was before the magistrate judge, regardless of the nature and scope of objections made to the magistrate judge's report.  Either the district court would then have to review every issue in the magistrate judge's proposed findings and recommendations or courts of appeals would be required to review issues that the district court never considered.

> In either case, judicial resources would be wasted and the district court's effectiveness based on help from magistrate judges would be undermined.

*Id.* at 622. *See also* Fed. R. Crim. P. 59(b)(2) (requiring objecting party to file "*specific*, written objections to the proposed findings and recommendations") (emphasis added).

Here, objections to Magistrate Judge VanDervort's PF&R were due by March 8, 2010, pursuant to 28 U.S.C. § 636(b)(1) and Fed. R. Crim. P. 59. Defendants timely filed objections [Docket 116 and 117], to which the United States responded [Docket 118]. The undersigned now reviews de novo the portions of Magistrate Judge VanDervort's PF&R to which Defendants Brodnik and Kritt objected.[1]

## I. BACKGROUND

Defendant Randy Michael Brodnik, D.O., is an osteopathic physician with an obstetrics and gynecology practice, Bluefield Women's Center, Inc. ("BWC") in Bluefield, West Virginia. Defendant Anthony Kritt is a Maryland resident and attorney. Defendants were charged in a seven count Indictment filed on March 18, 2009, and an eight count Superseding Indictment filed on November 3, 2009. The Indictment and Superseding Indictment allege that Defendants violated the tax laws of the United States through "an elaborate 'employee-leasing' scheme" (Docket 67 at 2) that stretched from Defendant Brodnik's medical practice in rural Bluefield, West Virginia to the distant overseas locales of Ireland, Hungary, Cyprus, the Channel Islands, Nevis, and the Isle of Man. The Indictment charges Defendants with conspiring to defraud the United States of income taxes in violation of 18 U.S.C. § 371[2] (Count One) and separate counts of income tax evasion for

---

[1] The Court notes that Defendants did not file objections as to all of the above motions.

[2] 18 U.S.C. § 371 states that "[i]f two or more persons conspire either to commit any offense against
(continued...)

tax years 1999 (Count Three), 2000 (Count Four), 2001 (Count Five), 2002 (Count Six) and 2003 (Count Seven) in violation of 26 U.S.C. § 7201.[3]  Count Two also alleged income tax evasion for the tax year 1998, but only named Defendant Brodnik.  The Superseding Indictment added Count Eight, which charged that Defendants "did endeavor to corruptly obstruct and impede, and did corruptly obstruct and  impede, the due administration of the internal revenue laws" and aided and abetted each other in doing so in violation of 26 U.S.C. § 7212(a) and 18 U.S.C. § 2.[4]  (Docket 66).

---

[2](...continued)
the United States, or to defraud the United States, or any agency thereof in any manner or for any purpose, and one or more of such persons do any act to effect the object of the conspiracy, each shall be fined under this title or imprisoned not more than five years, or both."  To prove a violation of 18 U.S.C. § 371, the United States must show "'(1) the existence of an agreement, (2) an overt act by one of the conspirators in furtherance of the [agreement's] objectives, and (3) an intent on the part of the conspirators to agree, as well as to defraud the United States.'"  *United States v. Vogt*, 910 F.2d 1184, 1202 (4th Cir. 1990) (quoting *United States v. Shoup*, 608 F.2d 950, 956 (3rd Cir. 1979)).

[3]  26 U.S.C. § 7201 states that "[a]ny person who willfully attempts in any manner to evade or defeat any tax imposed by this title or the payment thereof shall, in addition to other penalties provided by law, be guilty of a felony and, upon conviction thereof, shall be fined not more than $100,000 ($500,000 in the case of a corporation), or imprisoned not more than 5 years, or both, together with the costs of prosecution."  "To obtain a conviction under [26 U.S.C. § 7201], the Government must prove willfulness, a substantial tax deficiency, and an affirmative act constituting an attempted evasion of the tax."  *United States v. Goodyear*, 649 F.2d 226, 227-28 (4th Cir. 1981).  An affirmative act of evasion is one "the likely effect of which would be to mislead or conceal."  *Spies v. United States*, 317 U.S. 492, 499 (1943).

[4]  26 U.S.C. §7212(a) provides that "[w]hoever corruptly . . . endeavors to intimidate or impede any officer or employee of the United States acting in an official capacity under this title, or in any other way corruptly . . . obstructs or impedes, or endeavors to obstruct or impede, the due administration of this title, shall, upon conviction thereof, be fined not more than $5,000, or imprisoned not more than 3 years, or both . . .."  "In order to prove a violation of 26 U.S.C. § 7212(a), the government must prove that the defendant: 1) corruptly; 2) endeavored; 3) to obstruct or impede the administration of the Internal Revenue Code."  *United States v. Wilson*, 118 F.3d 228, 234 (4th Cir. 1997).  18 U.S.C. § 2(a) provides that "[w]hoever commits an offense against the United States or aids, abets, counsels, commands, induces or procures its commission, is punishable as a principal."

Count One of the Superseding Indictment alleges that Defendants conspired to conceal from the Internal Revenue Service ("IRS") income that Defendant Brodnik earned from BWC, via an "elaborate 'employee-leasing' scheme." (Docket 66 at ¶ 4). The Superseding Indictment alleges that Defendants created and used a number of domestic and foreign entities (*Id.* at ¶ 6) and executed "sham 'employee leasing' contracts" and created and used  international bank accounts, shell corporations, and other entities in furtherance of the scheme. (*Id.* at ¶¶ 5 and 9). The Superseding Indictment charges that Defendants committed overt acts "within the Southern District of West Virginia, and elsewhere. " (*Id.* at ¶ 12). The Superseding Indictment describes the overt acts as beginning with the execution of three contracts in September, 1998, that made Defendant Brodnik an employee of a company in Ireland, transferred that company's rights to a Nevada company which Defendant Kritt created, and leased Defendant Brodnik to BWC. (*Id.* at ¶ 13) The Superseding Indictment alleges that thereafter BWC transferred millions of dollars of untaxed income earned by Mr. Brodnik to his overseas accounts (*Id.* at ¶¶ 13, 14, 20, 25, 30 and 35) and that Defendant Kritt prepared (*Id.* at ¶¶ 23, 27, 33, 37, and 42) and Defendants filed false and fraudulent corporate and personal income tax returns claiming deductions of amounts attributable to Defendant Brodnik's "medical services as a 'leased' employee" declaring substantially reduced amounts as income to Defendant Brodnik. (*Id.* at ¶¶ 16, 18, 22, 24, 28, 29, 32, 34, 36, 38, 41, 43, and 45). The Superseding Indictment alleges that, in 2000 and 2002, Defendants obtained lines of credit through the foreign entities which they were using so that Defendant Brodnik could take loans upon the funds which he had on account with the understanding that he would pay interest upon the loans which "was a sham since any interest payments [he] made would be returned to [the foreign entity], less administrative fees, to [his] . . . account". (*Id.* at ¶¶ 6(h), 21 and 31).

5

Paragraph 2 of Counts Two through Seven of the Superseding Indictment alleges that "in the Southern District of West Virginia and elsewhere" Defendants willfully attempted to evade income tax which Defendant Brodnik owed by creating "sham 'employee-leasing' contracts" and holding Defendant Brodnik out as an employee of  foreign leasing companies under "a sham device," causing BWC to make payments of significant amounts in accordance with the sham contracts and device; and filing false personal and corporate income tax returns for the years 1998, 1999, 2000, 2001, 2002 and 2003.  Paragraph 2 of Counts Two through Seven of the Superseding Indictment contains the following subparagraph (f) as an alleged affirmative act which was not originally in the Indictment:

> filing with the IRS materially false and fraudulent U.S. Individual Income Tax Returns, Forms 1040, for tax years 2004 and 2005 that falsely claimed, among other things, that Defendant RANDY MICHAEL BRODNIK had been an employee of a Hungarian company.

Count Eight of the Superseding Indictment charges that Defendants "did endeavor to corruptly obstruct and impede, and did corruptly obstruct and impede, the due administration of the internal revenue laws" and aided and abetted each other in doing so in violation of 26 U.S.C. § 7212(a) and 18 U.S.C. § 2.  Count Eight alleges that Defendants did so, among other things, as follows:

> c.     by causing to be prepared, subscribed to and filed with the IRS on or about October 15, 2008, an Amended U. S. Individual Income Tax Return for the year 2007, Form 1040X, which falsely described Defendant RANDY MICHAEL BRODNIK's offshore funds as 'Deferrals and Related Earnings . . . . from Foreign Employer's Nonqualified Deferred Compensation Plan,' when, in fact, Defendant BRODNIK had no foreign employer and when his offshore funds were not 'nonqualified deferred compensation,' but rather were untaxed income he earned and secreted in offshore accounts;
>
> d.     in mid-to-late 2008, as the criminal investigation was nearing its conclusion, Defendant RANDY MICHAEL BRODNIK caused and directed an

6

individual known to the Grand Jury ('The Known Person') to do the following acts:

> i. To correspond in June 2008, with the Guernsey-based firm, Blenheim, and request that Defendant BRODNIK's purported foreign 'employer' wire Defendant BRODNIK more than $2.0 million from his secret offshore accounts for the purposes of paying federal income taxes owed by Defendant BRODNIK and evading criminal prosecution;
>
> ii. To send to Blenheim, in or about June 2008, a so-called 'Distribution Agreement' that characterized the transfer of funds by the 'foreign employer' as an 'early distribution' from Defendant RANDY MICHAEL BRODNIK's purported 'deferred compensation plan';
>
> iii. To cause Blenheim to send in or about October and November 2008, by wire transfer more than $2.2 million of funds that Defendant RANDY MICHAEL BRODNIK had previously claimed he could not access and control; and,
>
> iv. Just a few months prior to the date of the original March 2009 Indictment, to pay over to the IRS nearly $2.0 million dollars of Defendant BRODNIK's unpaid federal taxes that had accumulated interest- and penalty-free over the preceding decade.

"The Known Person" referred to in subparagraph (d) is Defendant Brodnik's counsel, Mr. Robert J. Stientjes.

## II. PENDING MOTIONS

A.  *Defendant Brodnik's Motion to Dismiss Indictment in Part, Second Motion to Dismiss Indictment in Part, Supplement to his Second Motion to Dismiss Indictment in Part and Response to Mr. Kritt's Motion to Dismiss; and Defendant Kritt's Motion to Dismiss the Superseding Indictment.*

1.  *Description of Motions*

In his Motion to Dismiss Indictment in Part (Docket 52), Defendant Brodnik requests that

Paragraph 45 of Count One[5] and Paragraph 2(f) of Counts Two through Seven of the Indictment[6]

---

[5]  Paragraph 45 of Count One of the Indictment charges that "[i]n or about October 2008, the Defendant RANDY MICHAEL BRODNIK subscribed and caused an Amended U.S. Individual

(continued...)

be dismissed.  In short,[7] Defendant Brodnik claims that he believed that employee leasing and foreign deferred compensation plans were legal.  However, pursuant to enactment of 26 U.S.C. § 409A in 2004, and the IRS's issuance of IRS Notice 2006-33, Defendant Brodnik claims that he then paid federal income tax and interest, via a 2007 Form 1040X, on the funds which were in the foreign deferred compensation plan.  Defendant Brodnik argues that because he complied with 26 U.S.C. § 409A and IRS Notice 2006-33, it is improper for the United States to claim that he acted criminally.  In the alternative, he argues that even if he did not act in compliance with the law, he "could have not intended to violate the law by filing the 2007 Form 1040X when the law does not contain clear standards of conduct."  (Docket 52 at 7).  He claims that the paragraphs of the Indictment that he wishes dismissed "attempt to impose requirements upon Defendant Brodnik that are not required upon the face of IRS Notice 2006-33.  (*Id.* at 8).  Further, he argues that "[a]lthough Defendant Brodnik maintains that IRS Notice 2006-33 is not ambiguous and that he followed its

---

[5](...continued)
Income Tax Return for the year 2007, Form 1040X, to be filed with the IRS, which stated that he had in excess of $5.5 million in offshore funds. Defendant RANDY MICHAEL BRODNIK also falsely described on this form that these funds were "Deferrals and Related Earnings . . . from Foreign Employer's Nonqualified Deferred Compensation Plan," when, in fact, he had no foreign employer and that his offshore funds were not "nonqualified deferred compensation," but rather were untaxed income he earned and secreted in offshore accounts."

[6] Paragraphs 2(f) of Counts Two though Seven of the Indictment alleges that as an act in furtherance of tax evasion from 1998 through 2003, Defendants Brodnik and Kritt "causing to be prepared, subscribed to and filed with the IRS on or about October 15, 2008, an Amended U. S. Individual Income Tax Return for the year 2007, Form 1040X, which stated that Defendant BRODNIK had in excess of $5.5 million in offshore funds. Defendant BRODNIK also falsely described these funds as 'Deferrals and Related Earnings . . . . from Foreign Employer's Nonqualified Deferred Compensation Plan,' when, in fact, Defendant BRODNIK had no foreign employer and that his offshore funds were not 'nonqualified deferred compensation,' but rather were untaxed income he earned and secreted in offshore accounts."

[7] See the PF&R for a full description of Defendants' motions.

guidance, even if his interpretation is incorrect, the ambiguity of IRS Notice 2006-33 compels this Court to dismiss [the aforementioned paragraphs of the Indictment] because Defendant Brodnik cannot be prosecuted for allegedly violating ambiguous guidance in IRS Notice 2006-33.  (*Id.* at 10).

In his Second Motion to Dismiss the Indictment in Part (Docket 94), Defendant Brodnik requests that the Court dismiss Paragraph 45 of Count One, Paragraphs 2(f) and (g) of Counts Two through Seven,[8] and Paragraphs 2(c) and (d) of Count Eight of the Superseding Indictment.[9]  This motion incorporates the arguments that he made in his initial Motion to Dismiss the Indictment in Part.  He also argues that the United States included Paragraph 2(f) of Counts Two through Seven of the Superseding Indictment in order to keep the statute of limitations open for years for which the six year period would have otherwise expired.  Defendant Brodnik further argues that Paragraphs 2(c) and (d) of Count Eight of the Superseding Indictment were only included "for the sole purpose of 'bootstrapping' its Motion to Disqualify Counsel Stientjes," in violation of the Sixth Amendment. (Docket 94 at 5).  In his Supplement to the Second Motion to Dismiss Indictment in Part, Defendant Brodnik used an expert report from Mr. Eric Johnson to support his propositions.

In Defendant Kritt's motion to dismiss the Superseding Indictment (Docket 92) he argues that:

1. The deferred foreign compensation program at issue in this case cannot give rise to criminal liability because the law is undecided as to the deferred foreign compensation program.
2. Counts Two, Three, Four and Five are time barred by the six-year statute of limitations per 26 U.S.C. §6531.
3. The [I]ndictment is multiplicitous.

---

[8]  Paragraph 2(f) of of Counts Two through Seven of the Superseding Indictment

[9]  In the Superseding Indictment, the United States added Paragraph 2(f), thus making Paragraph 2(f) of the Indictment Paragraph 2(g) of the Superseding Indictment.

4.     The [S]uperseding [I]ndictment was improperly issued for the purpose of making codefendant Randy Brodnik's counsel, Robert Stientjes, a witness.

5.     The [S]uperseding [I]ndictment was improperly issued for the purpose of saving the six-year statute of limitations, which has already tolled.

6.     For such further reasons set forth in Mr. Kritt's memorandum of law in support of this motion.

Finally, in his Response to Defendant Kritt's Motion to Dismiss, Defendant Brodnik argues that "[t]he ambiguity of the tax law upon which the Superseding Indictment is based compels this Court to dismiss the Superseding Indictment because Defendants cannot be prosecuted for allegedly violating ambiguous tax law." (Docket 97 at 5).

2.     *Objections*

a.     *Defendant Brodnik's Objections*

As noted above, Magistrate Judge VanDervort recommended in his PF&R that the Court deny the above Motions. Both Defendants timely filed objections to the PF&R.

The Court observes that many of Defendant Brodnik's objections—some of which have been adopted by Defendant Kritt— are directed at re-litigating, in their entirety, the issues that were raised before Magistrate Judge VanDervort. To the extent that Defendants attempt to do so, their objections are overruled. Such general objections are inappropriate. This Court will only review objections that are specific and particularized. *Midgette*, 478 F.3d at 621-22.

In response to the PF&R, Defendant Brodnik makes the following specific and particularized objections. First, he argues that Magistrate Judge VanDervort improperly "lumps Defendant Brodnik's Motion to Dismiss in Part with Defendant Kritt's Motion to Dismiss," and did not address the arguments in Defendant Brodnik's motion. (Docket 116 at 12).

Next, Defendant Brodnik argues that because the PF&R stated that

10

> [w]hile it does not appear that Mr. Stientjes acted in any way in furtherance of the Defendants' conduct as alleged [in Paragraph 2(d) of Count Eight of the Superseding Indictment] . . . he nevertheless was principally involved in negotiations and transactions which brought their conduct to an end.

(Docket 112 at 36), the PR&F should have, therefore, dismissed Paragraph 45 of Count One, Paragraphs 2(f) and (g) of Counts Two through Seven, and Paragraphs 2(c) and (d) of Count Eight because the PF&R concluded that the actions of Mr. Stientjes did not "amount to a continuing act or obstruction of an investigation."  (*Id.* at 18).

Defendant Brodnik also argues that he had a duty of consistency.  Because he reported to the IRS from 1998-2003 that his deferred compensation plan is a valid nonqualified deferred compensation plan, Defendant Brodnik argues that he was "required by the duty of consistency to report and pay tax on [the 2007 Form 1040X] when the law requires reporting and payment from valid nonqualified deferred compensation plans . . . . even if the plan was invalid."  (*Id.* at 19-20). Due to this, Defendant Brodnik claims that the United States' argument that the filing of the 2007 Form 1040X and the payment of tax are continuing acts or obstruction of the investigation lacks merit.

Pursuant to his argument that the PF&R incorrectly lumped his and Defendant Kritt's motions to dismiss together, Defendant Brodnik submitted a separate objection regarding Magistrate Judge VanDervort's denial of Defendant Kritt's motion to dismiss and Defendant Brodnik's response in support.  This objection deals with the issue of ambiguous law.  Defendant Brodnik argues that the PF&R "incorrectly determines that the allegations do not rest upon ambiguous law, and this case is distinguishable from *United States v. Critzer*, 498 F.2d 1160 (4th Cir. 1974) and *United States v. Mallas*, 762 F.2d 361 (4th Cir. 1985)."  (*Id.* at 2).  Again, Defendant Brodnik spends much of this objection attempting to wholly re-litigate issues that were raised before Magistrate

Judge VanDervort.  As noted early, the Court overrules such general objections.  However, Defendant Brodnik does point to several alleged errors with specificity and particularity.

First, Defendant Brodnik argues that Magistrate Judge VanDervort erroneously avoided the issue that the definition of "constructive receipt" prior to the enactment of 26 U.S.C. § 409A was ambiguous by stating that the question in the instant case is whether Defendant Brodnik's deferred compensation plan is a valid or invalid nonqualified deferred compensation plan.  Defendant Brondik argues that this is "clearly incorrect, as whether the plan is valid or invalid rests on whether the beneficiary maintains 'constructive receipt.'  The concepts of valid vs. invalid cannot be arbitrarily separated from the determination of whether there exists constrictive receipt.  The two questions are identical." (*Id.* at 26).

Further, Defendant Brodnik argues that the PF&R ignores the definition of a nonqualified deferred compensation plan that was provided in the legislative history to 26 U.S.C. § 409A,[10] and that this definition is "very broad, open-ended, and clearly applies to the fact of Defendant Brodnik's deferred compensation plan." (*Id.*).  Regarding the United States's argument that his deferred compensation plan does not meet this definition because the plan is fraudulent, he argues that

> this argument is inseparable from the previous argument regarding a valid vs. an invalid plan. Again, the question of whether a nonqualified deferred compensation plan is fraudulent rests upon the determination of whether there exists constructive receipt by the beneficiary. In addition, this argument is clearly erroneous given that the comments of Assistant Secretary of Treasury, Pam Olson, are specifically addressing Defendant Brodnik's-type of deferred compensation plan. The United States can point to no facts that distinguish the foreign nonqualified deferred compensation plans discussed by Assistant Secretary of Treasury from the

---

[10]  "A nonqualified deferred compensation plan is any plan that provides for the deferral of compensation other than a qualified employer plan or any bona fide vacation leave, sick leave, compensatory time, disability pay, or death benefit plan."  H.R. Rep. No. 108-548, at 354 (2004).

12

nonqualified deferred compensation plan of Defendant Brodnik. Thus, Defendant Brodnik's plan clearly is addressed by 26 U.S.C. § 409A and Notice 2006-33.

(*Id.* at 27). He finishes this objection with the conclusion that the "murky realm of the taxation of nonqualified deferred compensation plans from 1998-2003 can hardly be classified as common sense. Congress and the IRS acknowledged that much in providing 26 U.S.C. § 409A and Notice 2006-33." (*Id.* at 30).

> b.    *Defendant Kritt's Objections*

Defendant Kritt makes the following objections to the PF&R:

1. On page 16 of the Magistrate Judge's decision he states: "Following the direction of the Fourth Circuit in Schmidt, the undersigned finds that basic tax law applicable to Defendants' conduct as alleged in the Superseding Indictment was clear and well defined well before Defendants engaged in it." On page 17 of the Magistrate Judge's decision he states: "Whether Defendants' non-qualified deferred compensation plan was legitimate or was created to evade the payment of income taxes is a question of fact for a jury."

2. Defendant Kritt incorporates by reference the analysis on pages 12 through 20 of Defendant Brodnik's objections [Document 116].

3. The committee report for HR 110-431, the bill that introduced IRC §457A, attached hereto as Exhibit 1, shows the law was unclear prior to the enactment of Sec. 409A.

> Prior to the enactment of section 409A, while the general tax principles governing deferred compensation were well established, the determination whether a particular arrangement effectively allowed deferral of income was generally made on a facts and circumstances basis. There was limited specific guidance with respect to common deferral arrangements. The Congress believed that it was appropriate to provide specific rules regarding whether deferral of income inclusion should be permitted and to provide a clear set of rules that would apply to these arrangements. The Congress believed that certain arrangements that allow participants inappropriate levels of control or access to amounts deferred should not result in deferral of income inclusion. The Congress also believed that certain arrangements, such as offshore trusts, which effectively protect assets from creditors of the

employer, should be treated as funded and not result in deferral of
income inclusion to the extent the amounts are vested.

(Docket 117 at 1-3).

    *3.*    *Discussion*

        *a.*    *Defendant Brodnik's Objections*

In reviewing Defendant Brodnik's motions and objections, the Court observes that Defendant Brodnik misstates the indictments and issues in this case. Contrary to how he has framed his arguments, the United States is not alleging that his deferred compensation plan was illegal. Rather, the United States is arguing that his deferred compensation plan was used for the illegal purpose of evading income taxes. Defendant Brodnik has artfully attempted to focus the Court's attention on the law of deferred compensation plans. However, despite Defendant Brodnik's arguments, such plans and the law supporting them are not the ultimate issue in this case.

Defendant Brodnik objects that the PF&R improperly discussed his and Defendant Kritt's motions to dismiss together, and that Magistrate Judge VanDervort did not address Defendant Brodnik's motion. The undersigned finds that this objection lacks merit. Defendant Brodnik argued in his first motion to dismiss, inter alia, that 26 U.S.C. § 409A and IRS Notice 2006-33 "lack clear meaning." (Docket 52 at 7). Defendant Kritt, meanwhile, argued that "the law is undecided as to the deferred foreign compensation program," (Docket 34 at 1) to which Defendant Brodnik replied "that the tax law relied upon by the United States in this case is ambiguous and does not support the allegations in the Superseding Indictment." (Docket 97 at 3). Both motions raise the issue of unclear/ambiguous law, and it was appropriate for Magistrate Judge VanDervort to consider them together.

14

Defendant Brodnik correctly points out that the PF&R does not discuss the other argument in his first motion to dismiss: that because he complied with 26 U.S.C. § 409A and IRS Notice 2006-33 via his filing of 2007 Form 1040X, it is improper for the United States to claim that he acted criminally.  Even so, however, this argument fails.  In Paragraph 45 of Count One and Paragraph 2(g) of the Superseding Indictment, the United States alleges that, on the 2007 Form 1040X, Defendant falsely described over $5.5 million in offshore funds as "'Deferrals and Related Earnings . . . . from Foreign Employer's Nonqualified Deferred Compensation Plan,' when, in fact, [he] had no foreign employer and that his offshore funds were not 'nonqualified deferred compensation,' but rather were untaxed income he earned and secreted in offshore accounts."  As the United States is arguing that Defendant Brodnik actually had no foreign employer, and that the funds he described as a nonqualified deferred compensation plan were actually untaxed income hidden in a foreign account, Defendant's Brodnik's alleged compliance with 26 U.S.C. § 409A and IRS Notice 2006-33 is of no import.  Even if Defendant Brodnik complied with those provisions, such compliance does not resolve the allegation that his foreign employer was fraudulent and that, therefore, his self-described nonqualified deferred  compensation plan was, in fact, simply untaxed income that he hid overseas.  That question is one for the jury.

Defendant Brodnik's argument that, because  Magistrate Judge VanDervort stated  that "it does not appear that Mr. Stientjes acted in any way in furtherance of the Defendants' conduct" as alleged [in Paragraph 2(d) of Count Eight of the Superseding Indictment],  the PR&F should have, therefore, dismissed Paragraph 45 of Count One, Paragraphs 2(f) and (g) of Counts Two through Seven, and Paragraphs 2(c) and (d) of Count Eight because the PF&R concluded that the actions of Mr. Stientjes did not "amount to a continuing act or obstruction of an investigation" (Docket 116

at 18) also lacks merit.  First, Defendant Brodnik takes Magistrate Judge VanDervort's words out of context, as the portion of the PF&R that he cites actually relates to  the issue of whether Mr. Stientjes should be disqualified.  Moreover, if one takes the time to actually read the text of the PF&R, Magistrate Judge VanDervort never wrote that  Mr. Stientjes' conduct did not "amount to a continuing act or obstruction of an investigation."  Even assuming *arguendo* that the PF&R did make such a conclusion, such a conclusion would be inappropriate.  Whether Mr. Stientjes acted in a way that amounted to a continuing act or obstruction of an investigation is a question of fact for the jury.  To the extent that the PF&R may imply this, it does so incorrectly.

Next, Defendant Brodnik's argument regarding the duty of consistency is without  merit. The duty of consistency "prevents a taxpayer who has already had the advantage of a past misrepresentation—in a year now closed to review by the government—from changing his position and, by claiming he should have paid more tax before, avoiding the present tax." *Lewis v. C.I.R*, 18 F.3d 20, 26 (1st Cir. 1994) (Breyer, C.J.)  The duty of consistency is a doctrine of civil tax law.  It applies to mistakes of fact, not mistakes of law.  *Id.*  The duty of consistency exists when three elements are present: "(1) a representation or report by the taxpayer; (2) on which the Commission[er] has relied; and (3) an attempt by the taxpayer after the statute of limitations has run to change the previous representation or to recharacterize the situation in such a way as to harm the Commissioner." *Eagan v. United States*, 80 F.3d 13, 17 (1st Cir. 1996) (internal citations omitted).

The duty of consistency is not applicable, as argued,  to the case at bar.  First, Defendant Brodnik is arguing mistakes of law, not fact, in his motions to dismiss.  Second, as the United States pointed out in its response to Defendant Brodnik's objections, there is no evidence that the IRS

relied on his assertions that he had an overseas employer and a nonqualified deferred compensation plan.  Further, this is a criminal, and not civil, action.

Finally, there are the arguments made by Defendants that the applicable law was ambiguous.  Defendant compares his situation to *United States v. Critzer*, 498 F.2d 1160 (4th Cir. 1974) and *United States v. Mallas*, 762 F.2d 361 (4th Cir. 1985), cases where the Fourth Circuit reversed criminal tax evasion convictions due to unclear law.  However, this argument was made before Magistrate Judge VanDervort, and the undersigned will not entertain such a generalized objection.

Defendants' guilt in this case turns not on the characterization of the nonqualified deferred compensation plan, but whether the plan was used to conceal income and assets in a fraudulent manner.  *See United States v. Schmidt*, 935 F.3d 1440, 1444 (Fourth Cir. 1991) (stating that the defendants in that case ignored "that a criminal case such as the one with which we here deal turns not on the characterization of the [unincorporated business organization] but on whether, sham or not, the [unincorporated business organization] was used to conceal income and assets in a fraudulent manner.").

In *Schmidt*, Defendants were indicted on tax evasion and other charges after promoting trusts known as unincorporated business organizations ("UBOs").  "Participants in the UBOs could assign income and assets to the trusts and take otherwise unavailable deductions for purely personal expenses and could further avoid the payment of taxes on income by effecting 'distributions' of their income to a financial institution in the Marshall Islands."  *Id.* at 1442.  Following indictment, defendants moved to have the indictment dismissed because the alleged tax violations were "vague

and highly debatable." *Id.* at 1443. The District Court disagreed,[11] and defendants appealed upon conviction. They argued on appeal that the United States could point to no statute, regulation, or court decision that could have served to give appellants fair warning that the sale of UBOs was criminal, as they claimed the issue of tax liability revolved around the subsequent taking of deductions against income generated by the UBOs, an area of the law that they said was riddled by vague and highly debatable interpretations of such portions of the tax code *Id.* at 1448.

The Fourth Circuit rejected this argument, holding that

[h]ere again, appellants have sought to divert attention away from the well-settled law of what constitutes tax evasion and into the misty realm of UBOs and deductions against personal income. By properly focusing on pertinent tenets of tax law—that earned income is taxable to those who earn it and that dominion and control over property, rather than documentary title, determines to whom the income from that property is taxable—one discovers a number of cases. *See Holman v. Holman*, 728 F.2d 462 (10th Cir.1984) (assignment of income doctrine and grantor trust provisions applied to hold trusts mere shams for tax avoidance purposes); *Hanson v. Commissioner*, 696 F.2d 1232 (9th Cir.1983) (same); *Schulz v. Commissioner*, 686 F.2d 490 (7th Cir.1982) (same); *Vnuk v. Commissioner*, 621 F.2d 1318 (8th Cir.1980) (same); *Wesenberg v. Commissioner*, 69 T.C. 1005 (1978) (same); *Zmuda v. Commissioner*, 731 F.2d 1417 (9th Cir.1984) (investors, as trustees, had complete control over the income-producing property of the trusts). Hence, contentions of vagueness and debatability simply do not hold up.

*Id.*

In the instant case, Defendants Brodnik and Kritt have attempted to divert the court's attention from the law of tax evasion and into the "misty realm" of nonqualified deferred compensation plans, IRS Notice 2006-33, and 26 U.S.C. § 409A. As in *Schmidt*, the tenets of tax evasion law relevant to the Government's allegations in this case are clear, unambiguous and well settled. Prior to the

---

[11]  In fact, the district court observed that "[a]lmost every defendant that is accused of promoting bogus tax shelters attempts to escape prosecution by raising [a *Mallas*] argument." United States v. Lewis, 730 F. Supp. 691, 693 (W.D.N.C. 1990).

development of Defendant's scheme in 1998, the law was already quite clear that Defendants could be held liable if Defendant Brodnik's foreign employer and his alleged nonqualified deferred compensation plan were being used to evade taxes.  Accordingly, Defendant Brodnik's objections related to the definition of "constructive receipt" prior to the enactment of 26 U.S.C. § 409A and the definition of a nonqualified deferred compensation plan that was in the legislative history of that statute are without merit.

> b.  *Defendant Kritt's Objections*

The court has already noted that it will not entertain generalized objections.  Defendant Kritt's first objection does not point the court to a specific and particularized error by Magistrate Judge VanDervort.  Therefore, the Court overrules it.  His other two objections have already been addressed by the Court, and are overruled as well.

> 4.  *Conclusion*

For the reasons stated above, the undersigned **ADOPTS** the PF&R as to Defendant Kritt's Motion to Dismiss the Superseding Indictment and Defendant Brodnik's Motion to Dismiss Indictment in Part; Second Motion to Dismiss Indictment in Part, Supplement to Second Motion to Dismiss Indictment in Part; and Response to Mr. Kritt's Motion to Dismiss.  The Court **OVERRULES** both Defendant Kritt's objections to the PF&R and Defendant Brodnik's first and third objections to the PF&R, and **ORDERS** the above motions denied.

> B.  *United States' Motion to Disqualify Counsel Due to Conflict of Interest*

>> 1.  *Motion and Defendant Brodnik's Objection*

In its motion, the United States requests that the Court disqualify Defendant Brodnik's counsel, Mr. Robert J. Stientjes.  It argues that Mr. Stientjes should be disqualified on two different

grounds.  First, the United States argues that Mr. Stientjes should be disqualified because he may be called as a witness in this case due to the conduct that is alleged in Paragraph 2(d) of Count Eight of the Superseding Indictment.  It claims that Mr. Stienjes' alleged conduct amounts to "powerful evidence of Defendant Brodnik's control of and access to his 'deferred compensation' and evidence of Mr. Stientjes' attempt to further his client's scheme." (Docket 49 at 6).  The United States further alleges that Mr. Stientjes may also have a potential conflict of interest, as Mr. Stientjes may "[possibly represent][12] a South Dakota physician who is presently under investigation by the IRS in an nearly identical scheme . . . . [T]he United States has advised Mr. Stientjes that it wanted to discuss the possibility of obtaining this physician's cooperation against Defendant Anthony Kritt and, in turn, obtaining Defendant Kritt's cooperation against Defendant Brodnik." (Docket 49 at 8).  The United States further argued that

> [d]isqualification is appropriate because: 1) evidence of Mr. Stientjes's repatriation of Defendant Brodnik's money from a secret offshore account is highly relevant and admissible evidence; 2) no substantial hardship on Defendant Brodnik will result since trial of this matter is not scheduled until November 2009 and because it is understood that Mr. Stientjes does not intend to function as lead trial counsel; 3) the Judiciary and the Department of Justice have an independent interest in ensuring that criminal trials are conducted within the ethical standards of the profession and that legal proceedings appear fair to all who observe them; 4) the possibility that Defendant Brodnik will raise a reliance defense mid-trial and blame Mr. Stientjes for giving poor legal advice and thereby cause a mis-trial; and 5) the likelihood that Defendant Brodnik will challenge any conviction on the claim of ineffective assistance of counsel or some related theory.

(*Id.* at 14-15).

---

[12]  Defendant Brodnik's Objection to United States; Motion to Disqualify Counsel states that Mr. Stientjes representation of the physician, Dr. Edward J.S. Picardi, ended on March 15, 2007. (Docket 51 at 9).

In the PF&R, Magistrate Judge VanDervort found no actual or potential conflict of interest. However, Magistrate Judge VanDervort did find that Mr. Stientjes' conduct created an unsworn witness problem.  He stated that

> [b]y virtue of his first hand involvement in the circumstances, the United States will likely call Mr. Stientjes to testify about them at trial.  Because Mr. Stientjes obtained the funds from Dr. Brodnik's offshore accounts to pay Dr. Brodnik's taxes claiming that there had been changes in the law, it is also likely that Dr. Brodnik and Mr. Kritt might call Mr. Stientjes in their defense . . . . [H]e . . . was principally involved in negotiations and transactions which brought [Defendants'] conduct to an end.  In the words of the [*United States v. Evanson*, 584 F.3d 904 (10th Cir. 2009)] Court, Mr. Stientjes "assisted in the production of evidence."

(Docket 112 at 36).  Magistrate Judge VanDervort accordingly recommended that the Court grant the United States' motion to disqualify Mr. Stientjes.

In his objections, Defendant Brodnik agrees with Magistrate Judge VanDervort's proposed finding that his representation by Mr. Stientjes presents no actual or potential conflicts of interest. Defendant Brodnik argues, however, that Magistrate Judge VanDervort incorrectly concluded that there is an unsworn witness problem.  He states that only the United States wishes or plans on calling Mr. Stientjes as a witness, and that disqualification would create a substantial hardship upon him.  He further argues that Magistrate Judge VanDervort incorrectly analyzed *United States v. Evanson*, which Defendant Brodnik argues only stands for the proposition "that the Court of Appeals will not revisit the decision of the district court in disqualifying an attorney absent clearly unreasonable circumstances . . . . [T]he facts of *Evanson* and the decision to disqualify are not subject to any deference."  (Docket 116 at 23-23).

2.      *Applicable Law*

21

The right of a defendant to be represented by counsel of his or her choosing is contemplated by the Sixth Amendment.  *Wheat v. United States*, 486 U.S. 153, 159 (1988).  "The District Court must recognize a presumption in favor of [defendant]'s counsel of choice, but that presumption may be overcome not only by a demonstration of actual conflict but by a showing of a serious potential for conflict.  The evaluation of the facts and circumstances of each case under this standard must be left primarily to the informed judgment of the trial court."  *Id.* at 164.  Further, "the district court must be allowed substantial latitude . . . not only in those rare cases where an actual conflict may be demonstrated before trial, but in the more common cases where a potential for conflict exists which may or may not burgeon into an actual conflict as the trial progresses."  *Id.* at 163.

"An attorney has a potential conflict of interest if the interests of the defendant *could* place the attorney under inconsistent duties in the future."  *United States v. Jones*, 381 F.3d 114, 119 (2d Cir. 2004) (emphasis in original), citing *United States v. Kliti*, 156 F.3d 150, 153 n.3 (2d Cir. 1998).  Even in situations where there is no conflict of interest, disqualification of counsel may still be necessary if it appears that counsel has "first-hand knowledge of the events presented at trial."  *United States v. Locasio*, 6 F.3d 924, 933 (2d Cir. 1993).  A defendant's counsel may be disqualified when counsel might be called as a witness for the defendant or be an unsworn witness for the defendant at trial.  *Id.* at 934 (stating that "[w]hen an attorney is an unsworn witness . . . the detriment is to the government, since the defendant gains an unfair advantage, and to the court, since the factfinding process is impaired.  Waiver by the defendant is ineffective in curing the impropriety in such situations, since he is not the party prejudiced."); *Kliti*, 156 F.3d at 156 (providing that "[w]hen faced with an attorney as a sworn or an unsworn witness, the proper recourse is to disqualify the attorney, not to exclude the testimony.").  In the event of multiple conflicts of interest,

said conflicts should be considered together. *United States v. Pizzonia,* 415 F. Supp. 2d 168, 177 (E.D.N.Y. 2006) (Weinstein, J.).  While defendants can waive conflicts of interest in some circumstances, courts have the discretion "to reject a waiver in order to protect the integrity of the judicial proceedings and the public's interest in ensuring a just verdict." *Pizzonia,* 415 F. Supp. 2d at 177 (citing *Locascio*, 6 F.3d at 931).

In *United States v. Evanson*, the defendant, an attorney, was charged along with other individuals with conspiring to commit tax fraud, tax evasion and aiding and assisting in preparing false income tax returns.  The defendant in that case had hired his counsel prior to his indictment, while the investigation of the United States was still underway.  Ten months after the defendant was indicted, the United States moved to disqualify his counsel, Max Wheeler, as it alleged that "Mr. Wheeler was involved in, or had intimate knowledge of, efforts by 'Evanson and others ... to create false documents attempting to substantiate fictitious transactions' and to induce participants to sign misleading documents or give other exculpating evidence . . . The government contended that Mr. Wheeler would ,therefore, need to testify at Mr. Evanson's trial." *Id.* at 906.  While the magistrate judge in the case ruled against the motion to disqualify, he was reversed by the district court judge, who granted the motion.  On appeal, the Tenth Circuit concentrated on two letters which Mr. Evanson had sent to participants in his scheme as presenting the potential for conflict of interest and unsworn witness problems and found that "[t]he district court could reasonably anticipate that the letters would be offered into evidence, and admitted, at trial." *Id.* at 912-13.

The Court found that allowing Mr. Wheeler to remain on the case would also present challenges related to the defense of advice of counsel.  If the defendant raised the defense of advice of counsel at trial, said defense would implicate Mr. Wheeler in the alleged unlawful acts.  *Id.* at

23

913.  Further, such a defense would raise other problems.  First, Mr. Wheeler might become an unsworn witness.  Second, said defense would waive the attorney-client privilege, and create the possibility of Mr. Wheeler being called to testify against his client.  *Id.* at 914.  However, if Mr. Wheeler remained defendant's counsel and defendant did not raise defense of advice of counsel, then, on appeal or in collateral proceedings, the defendant could  argue that Mr. Wheeler was constitutionally ineffective in failing to do so.  *Id.* at 913

    *3. Discussion*

  The Court recognizes that disqualification of Mr. Stientjes would bring hardship to Defendant Brodnik.  However, the Court finds that disqualification is necessary given the difficulties that Mr. Stientjes' continued representation of Defendant Brodnik would bring to this case.  Mr. Stientjes is an unsworn witness in this case, and has a potential conflict of interest.

  Contrary to Defendant Brodnik's assertion, *Evanson* stands for more than the proposition that a court of appeals will not revisit a disqualification decision of a district court absent clear error.  While the attorney in *Evanson* did not behave in the way that Mr. Stientjes allegedly did in the instant case, *Evanson* demonstrates that, when a defense counsel in a criminal tax case may have gone from advocacy on behalf of his or her client to possible involvement in the facts of the case, disqualification is necessary.  Here, Mr. Stientjes' alleged efforts to repatriate Defendant Brodnik's funds from overseas has made him an unsworn witness.  Even if only the United States intends on calling Mr. Stientjes at trial, as Defendant Brodnik claims, Mr. Stientjes "role as advocate may give his client an unfair advantage, because the attorney can subtly impart to the jury his first-hand knowledge of the events without having to swear an oath or be subject to cross examination." *Locascio*, 6 F.3d at 933.

Further, the Court finds that Mr. Stientjes' continued involvement in this case would also bring other difficulties. As the Tenth Circuit recognized in *Evanson*, Mr. Stientjes' representation of Defendant Brodnik at trial would create difficulties at trial and/or on appeal due to the possibility of a reliance of counsel defense, or, if Defendant Brodnik is convicted, the possibility of a claim of ineffective assistance of counsel, if said defense is not used at trial.

However, the undersigned disagrees with Magistrate Judge VanDervort on the question of a potential conflict of interest. The Court finds that there is a potential conflict of interest in this case, due to Mr. Stientjes prior representation of the South Dakota physican, Dr. Edward J.S. Picardi. Should Dr. Picardi cooperate against Defendant Kritt, and Defendant Kritt cooperate against Defendant Brodnik, Mr. Stientjes would face a conflict of interest. While the court recognizes that Dr. Picardi executed a conflict waiver, Docket 51 at Ex. 7, the Court finds that said waiver is insufficient to prevent a possible conflict.[13]

    4.    *Conclusion*

For the reasons stated above, the undersigned adopts the PF&R as to the United States' Motion to Disqualify Counsel Due to Conflict of Interest, and further **FINDS** that Mr. Stientjes' representation of Defendant Brodnik also creates a potential conflict of interest. The Court **OVERRULES** Defendant Brodnik's second objection to the PF&R, and **ORDERS** the above motion granted.[14]

---

[13] On its own, this potential conflict may not be sufficient for disqualification. However, when taken in conjunction with Mr. Stientjes' role as an unsworn witness, it provides further support for disqualification.

[14] The Court has also reviewed Defendant Brodnik's Response to the United States' Notice of Counsel Robert J Stientjes' Legal Representation (Docket 135). While it appears that the
(continued...)

C.      *Defendant Brodnik's Motion for Discovery*

      1.      *Motion*

In this motion, Defendant Brodnik requests discovery of the following:

1. All books, papers, documents, photographs, tangible objects or copies or portions thereof which pertain to Internal Revenue Service or U.S. Department of Treasury ("IRS") formulating its positions in Notice 2003-22, Notice 2006-33, and Notice 2007-89.

2. All written communications including, but not limited to, electronic mail, written correspondence, and notes, between revenue agents and IRS management, IRS case coordinators, and IRS National Office regarding the interpretation of Notice 2003-22; Notice 2006-33; and Notice 2007-89.

3. All written communication, including but not limited to any internal correspondence of the IRS with respect to the decision by any individuals within the IRS to pursue taxpayers for violating 26 U.S.C. § 409A or failing to comply with Notice 2006-33 or Notice 2007-89, when it was previously alleged that the taxpayers participated in a transaction similar to Notice 2003-22.

4. All names, titles, and contact information of any IRS employee who has knowledge with respect to the policy considerations and the decision-making process behind the decision of the IRS to draft and publish Notice 2003-22, Notice 2006-33, or Notice 2007-89.

5. During an alleged interview of Mik Underdown by Special Agent Robert Lanham on October 7, 2008, Special Agent Robert Lanham tape recorded himself saying, "I have 40,000 pages of documents involved in this case." On its discovery disk, the United States has only turned over approximately 17,000 pages of documents to Defendant Brodnik. Provide the remaining 23,000 of documents in Special Agent Lanham's possession.

6. All Grand Jury testimony of Federal Agents and Experts and all instructions to the grand jury in this case which pertain to the United States' theory of liability of Defendant Brodnik.

_____

[14](...continued)
professionalism of counsel in this case is not optimal, both the notice of counsel and the response were filed after the submission of the PF&R and, therefore, have no bearing on the Court's ruling on this issue. The Court will, however, monitor the conduct and professionalism of all counsel as this matter proceeds and take appropriate action as required.

(Docket 61 at 1-2).  Magistrate Judge VanDervort denied this motion.  He found that Defendant Brodnik

> has not demonstrated that the documents and information pertaining to the development and issuance of the IRS Notices which he requests are within the possession, custody or control of the prosecution in this case and are material to preparing his defense.  While Dr. Brodnik may argue that the Notices themselves are fundamental to his defense, Dr. Brodnik has not shown how the requested documents and information refute the United States' charges as set forth in the Superseding Indictment.  The documents and information which Dr. Brodnik requests, therefore, fall beyond the scope of allowable discovery under Rule 16(a)(1)(E)(i).

(Docket 112 at 41).  While Defendant Brodnik filed objections, he does not direct the court to any specific error made by Magistrate Judge VanDervort.  In short, Defendant Brodnik argues that materials related to IRS Notice 2003-22, Notice 2006-33, and Notice 2007-89 are material to his defense for reasons related to his arguments that he was acting in response to of 26 U.S.C. § 409A and IRS Notice 2006-33, and that the law applicable to his situation was unclear and/or ambiguous.  Out of an abundance of caution, the Court will review de novo Magistrate Judge VanDervort's finding on discovery despite Defendant Brodnik's lack of specific objections..

### 2.    Applicable Law

Federal Rule of Criminal Procedure 16(a)(1)(E)(i) provides that:

> (E) Documents and Objects.  Upon a defendant's request, the government must permit the defendant to inspect and to copy or photograph books, papers, documents, data, photographs, tangible objects, buildings or places, or copies or portions of any of these items, if the item is within the government's possession, custody, or control and:
> > (i) the item is material to preparing the defense.

Documents and things are "within the government's possession, custody, or control" if the prosecution has knowledge of and access to them.  *United States v. Santiago*, 46 F.3d 885, 894 (9th Cir. 1995).  Prosecutors are not required to provide documents and things "possessed by agencies

which had no part in the criminal investigation or when the prosecution had no control over the agency officials who physically possessed the documents." *United States v. Libby*, 429 F. Supp. 2d 1, 6-7 (D.D.C. 2006). *See also United States v. Pelullo*, 399 F.3d 197, 216-19 (3d Cir. 2005) (holding that the Pension and Welfare Benefits Administration ("PWBA"), a civil arm of the Department of Labor that had been monitoring a separate civil action against the defendant in that case, was not part of the prosecution team as there was "no indication that the prosecution and PWBA engaged in a joint investigation or otherwise shared labor and resources . . . . Nor is there any indication that the prosecution had any sort of control over the PWBA officials who were collecting documents. And [defendant's] arguments to the contrary notwithstanding, that other agents in the DOL participated in this investigation does not mean that the entire DOL is properly considered part of the prosecution team."). Documents and things are "material to preparing the defense" if they would "significantly . . . alter the quantum of proof in [a defendant's] favor." *United States v. Caro*, 597 F.3d 608, 621 (4th Cir. 2010). The Supreme Court stated in *United States v. Armstrong*, 517 U.S. 456, 462 (1996), that "in the context of Rule 16, 'the defendant's defense' means the defendant's response to the Government's case in chief. While it might be argued that as a general matter the concept of a 'defense' includes any claim that is a 'sword', challenging the prosecution's conduct of the case, the term may encompass only the narrower class of 'shield' claims, which refute the Government's arguments that the defendant committed the crime charged."

> 3.   *Discussion*

The Court has already stated that, despite Defendant's efforts to invoke them, provisions such as 26 U.S.C. § 409A and Notice 2003-22, Notice 2006-33, and Notice 2007-89 are not

pertinent to this case.  Accordingly, the Court finds that the materials requested by Defendant Brodnik in paragraphs one through four of his motion for discovery are not material.  Further, such materials are also not accessible to the government, nor are they in the government's possession. To paraphrase from *Pelullo*, 399 F.3d at 218, there is no indication that the prosecution and the IRS personnel or offices who promulgated the materials requested by Defendant Brodnik engaged in a joint investigation or otherwise shared labor and resources.  Nor is there any indication that the prosecution had any sort of control over the IRS officials who promulgated said materials.  The fact that IRS agents participated in this investigation does not mean that the entire IRS  is properly considered part of the prosecution team.  The Court finally notes that it appears that the United States has provided Defendants with the other materials requested in this motion. *See* Docket 106 at 63.  Accordingly, the Court denies Defendant Brodnik's motion for discovery.

### 4.    *Conclusion*

For the reasons stated above, the undersigned adopts the PF&R as to Defendant Brodnik's Motion for Discovery.  The Court **OVERRULES** Defendant Brodnik's fourth objection to the PF&R, and **ORDERS** the above motion **DENIED**.

### III. *CONCLUSION*

As stated above, the undersigned **ADOPTS** the PF&R as to Defendant Brodnik's Motion to Dismiss Indictment in Part [Docket 52]; Second Motion to Dismiss Indictment in Part [Docket 94]; Supplement to Second Motion to Dismiss Indictment in Part [Docket 96]; Response to Mr. Kritt's Motion to Dismiss [Docket 97]; Motion to Strike the Expert Testimony of Robert L. Sommers [Docket 53]; Motion for Discovery [Docket 61]; and Defendant Kritt's Motion to Dismiss the Superseding Indictment [Docket 92].  The undersigned also **ADOPTS** the PF&R as to the United

29

States' Motion to Disqualify Counsel Due to Conflict of Interest [Docket 49], and further **FINDS** as to that motion that Mr. Stientjes' representation of Defendant Brodnik also creates a potential conflict of interest.  The Court **OVERRULES** both Defendants' objections to the PF&R, and **ORDERS** Defendants' motions **DENIED**, and the United States' motion **GRANTED**.

The Court **DIRECTS** the Clerk to send a copy of this Order to the Defendants and their respective counsel and the United States Attorney.

ENTER:        April 29, 2010

IRENE C. BERGER, JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA